CHARLES BEWICK, ANDREW W. COMSTOCK AND WILLIAM B.
COMSTOCK v. GEORGE A. BUTTERFIELD AND JOHN H.
CRABLE.

*Contract—When making of not denied, but parties differ as to its terms, an instruction that parties' minds must have met, is misleading—Testimony may be given, by either party, in support of his theory of the agreement—Account rendered—Retention of, without objection; and rendering counter account in which amount of first account is credited, estop party from disputing first account in absence of proof of fraud or mistake.*

1. Where the fact of the making of some kind of an agreement between plaintiffs and defendants, relating to the driving of saw logs, is not

denied by either, but their recollection as to its terms differs, an instruction that the jury must find that the parties' minds met in a conversation at which such agreement was made, although good law in the abstract, was misleading under the circumstances of the case on trial.

**2.** In such a case, the parties have the right to introduce any competent testimony tending to support their respective cases, under their own theory of the agreement entered into.

**3.** A party claiming pay for driving logs for another, rendered an account for such driving to the other party, who made no protest against its correctness, but, after holding it for some two months, presented a bill for running logs, for a greater amount than the first account, but giving credit to the first party for driving the identical logs charged for in the first account, at the same number of feet and same price, as charged therein:

*Held,* that the retention of the bill and giving such credit amounted to a binding admission of defendants' liability therefor, in the absence of proof of fraud or mistake.

Error to Alpena. (Emerick, J.) Argued February 11, 1886. Decided February 17, 1886.

Assumpsit. Plaintiff brings error. Reversed. The facts are stated in the opinion.

*Turnbull & Dafoe,* for appellants:

He to whom an account is rendered is bound, within a reasonable time, to examine it and object if its correctness is disputed, and by failing so to do he will be bound by the account stated: *Lockwood v. Thorne,* 11 N. Y. 170; *Avery v. Leach,* 9 Hun, (N. Y.) 106; *White v. Campbell,* 25 Mich. 469 and cases cited. To make an account rendered a stated one, it is not necessary that mutual accounts should have existed between the parties. It may relate to a single debt or transaction: *Stevens v. Fuller,* 4 Mich. 386; and it seems a party is bound, even though the original contract is void under the statute of frauds: 2 Greenl. Ev. § 127; *Stevens v. Fuller,* 4 Mich. 386. As to the rule between merchants or other persons dealing upon equal terms, in the ordinary course of business, see *Shepard v. Bank,* 15 Mo. 143; *Sherman v. Sherman,* 2 Vern. 276. In the latter case two ordinary courses of mail were held sufficient time to make an account rendered, one stated: *Toland v. Sprague,* 12 Pet. 330; *Towsley v. Denison,* 45 Barb. 490. The rule is, that

if one does not object to an account rendered, within a reasonable time, he is bound by it, unless he can show its incorrectness: *Murray v. Toland*, 3 Johns. Ch. 569; *Wilde v. Jenkins*, 4 Paige, 481; or unless the circumstances are such as to tend to a contrary conclusion, and rebut the presumption of assent to the correctness of the account: *Guernsey v. Rexford*, 63 N. Y. 631. See also *Philips v. Belden*, 2 Edw. Ch. R. 1; *Lockwood v. Thorne*, 11 N. Y. 170. Proof of alleged fraud must be clear and convincing: *Bull v. Harris*, 31 Ill. 487. If, through some misunderstanding of the parties, neither of them understood an agreement as the other did, and plaintiff in good faith, under his understanding, performed work beneficial to defendant, he will be entitled to recover the reasonable value of the labor thus performed: *Richardson v. McGoldrick*, 43 Mich. 476; *Misner v. Darling*, 44 Mich. 438. The value of work is always a basis for recovery, where the terms of a contract are disputed: *McGraw v. Sturgeon*, 29 Mich. 427; *Moore v. Davis*, 49 N. H. 45. See, as to recovery where logs are mixed and one of the owners does more than his share of work upon them, *Peters v. Gallagher*, 37 Mich. 411.

*R. J. Kelley*, for defendants.
[No authorities cited.—REPORTER.]

MORSE, J. The plaintiffs brought suit in the Alpena circuit against the defendants, in assumpsit, declaring upon a special count, and also upon the common counts.

Defendants pleaded the general issue, and gave notice of set-off, which set-off, however, was abandoned upon the trial, being the subject-matter of another suit between the parties.

The verdict and judgment were for defendants, from which result the plaintiffs bring error.

The controversy between the parties grows out of the driving or running of logs in the West branch of Hubbard lake, in the summer of 1881. The West branch is formed by the union of Comstock and Brown creeks, some three or four miles from the lake. The plaintiffs had a large amount of logs in these two creeks, which they were running to the lake. A short distance below the merging of these creeks into the West branch, a stream, known as " Butterfield creek," runs into the main stream.

The defendants had a large number of logs in this creek, which they were also running into the lake. When the first drive of plaintiffs went down, some of defendants' logs floated or were run out into the branch and mixed with plaintiffs' logs, but for the driving of these no charge was made. After the first drive of plaintiffs passed the mouth of Butterfield creek, the defendants threw a boom across the West branch, above the Butterfield creek, so as to gain, as they claimed, a " clear river " in which to run their logs to the lake.

It was claimed by plaintiffs that defendants ran a large amount of logs out of this creek into the main river, and left them, so that when the second drive of plaintiffs came down, after the removal of the boom, they were obliged to run defendants' logs with their own to the lake, and that such work was worth twenty cents per thousand feet. The plaintiffs claimed an express contract on the part of defendants to pay for the running of these logs.

The testimony in relation to this alleged contract was confined to the evidence of William B. Comstock on the part of the plaintiffs, and George A. Butterfield on behalf of the defendants. About the time of the starting of plaintiffs' second drive, Comstock and Butterfield had a conversation in the city of Alpena. Comstock claims that he told Butterfield that he must get his logs out of the way, and Butterfield said " if his logs were in the way, and plaintiffs did any work upon them, defendants would pay them for it."

Butterfield testifies that in this conversation Comstock complained that plaintiffs' men were doing all the driving ; that they were driving defendants' logs and should expect pay for it, at the regular rate, from the mouth of Hubbard lake down ; that he told Comstock he " guessed we are doing our share, and if they [plaintiffs] were doing any more work on our logs than we were doing on theirs, or any work that they were entitled to pay for, we would pay them for it."

Comstock testifies that after driving the logs down to Hubbard lake they drove them into a boom, and counted defendants' logs, and made out a bill of the same, and in June took it over to Butterfield, and presented it to him. The bill, at

twenty cents per thousand, amounted to $211.08, upon which was a credit to defendants for running some of plaintiffs' logs, amounting to $70.

Defendants made no protest against the correctness of this bill, or their liability for the same, but kept it until July or August, when they presented plaintiffs with a bill for running logs, amounting to some $690, and giving credit thereon to plaintiffs for running logs, for the same number of feet and same price per thousand as claimed in plaintiffs' bill, and for the identical logs. Plaintiffs not accepting defendants' charges, this suit was brought.

Upon the trial a large amount of evidence was given by defendants tending to show, under Butterfield's theory of the talk in Alpena, that they did their full share of the work in running the mixed logs, and therefore plaintiffs did no work for which they were entitled to pay. This testimony was objected to by plaintiffs' counsel as immaterial and irrelevant, but we think it was entirely proper. Defendants had a right to introduce any testimony tending to support their defense under their own theory of the agreement between Comstock and Butterfield. If defendant's promise was only to pay for what work was necessarily done by plaintiffs on defendants' logs, over and above what they ought to have done in running their own and defendants' together, and for the amount of plaintiffs' work if they did proportionally more on defendants' logs than defendants did upon theirs, it certainly was competent and material to show just how much defendants' men did in running these mixed logs. It is true that one or two questions were objectionable as calling for conclusions instead of facts, but, as the case must go back for a new trial for other errors, it is not necessary to notice such questions in detail.

It is assigned as error that the court refused to charge the jury as requested by plaintiffs' counsel in the second and third requests. The third, which embodied the substance of the second, was as follows: "If the jury find that defendant Butterfield said to W. B. Comstock, in substance, that if plaintiffs did any work on defendants' logs, or those they

were driving, that plaintiffs were entitled to pay for, that
they, defendants, would give it, then plaintiffs are entitled
to recover in this action." This request was not good in the
form presented. It should have gone further, as the jury
would also have to find that plaintiffs did do work that they
were entitled to be paid for, before they could bring in a ver-
dict for plaintiffs. The court, however, in relation to this
point charged the jury, in effect, that plaintiffs could not only
recover upon Comstock's version of the contract, but, if they
found the promise upon the part of the defendants to be as
Butterfield stated, then, if defendants failed to get their logs
out of the way, so as to justify the plaintiffs in doing the
work, defendants would be liable for the work so done. The
charge of the court was fair and just in this respect ; and we
do not find any claim of the plaintiffs upon the trial to
recover, except upon the contract made in the city of Alpena
between W. B. Comstock and Butterfield ; and the case was
properly submitted to the jury upon both versions of defend-
ant's promise in that conversation.

The remarks of the court in relation to the meeting of the
minds of the parties in that talk being necessary to make a
contract between the parties was good law in the abstract,
but might have been, and undoubtedly was, under the cir-
cumstances of this case, misleading. There was no pretense
that the minds of the parties did not meet in some kind of
an understanding.

The whole controversy was as to what the defendant said.
The defendant made some kind of a promise. Comstock
recollected it to be one thing, and the defendant another. If
the jury believed Comstock, Butterfield promised to pay for
the running of the logs if plaintiffs did any work upon them.
If they believed Butterfield, the contract was, in substance, to
pay for the running of the defendants' logs, if plaintiffs did
more work in proportion upon the mixed logs than defend-
ants did. But from the language of the court the jury might
easily have inferred that because the parties recollected the
promise differently there was consequently no promise at all,

as the minds of the parties did not meet in their remembrance of the talk.

The counsel for the plaintiffs also requested the court to instruct the jury, in substance, that the defendants, having, after this work was done, received a bill of the work from plaintiffs, and afterwards presented a bill to plaintiffs upon which this same work was credited, were bound by such acknowledgment in this action, unless they showed it was a mistake. This instruction the court refused, and did not give the substance of it in his general charge. The circuit judge only referred to the two bills as throwing some light upon the question as to what contract was made between the parties, if any, and as tending to show a recognition upon the part of defendants of a liability having been incurred before the work was done; and instructed the jury " to give them just exactly such weight or effect as they have produced upon your minds, in enabling you to determine whether this contract [as claimed by Comstock] in this case was made, and whether it was in any way recognized by the defendants after the work in question was done."

The amount of work claimed in this bill of defendants not being connected with the running of these mixed logs, but referring to another drive, the keeping of this bill of plaintiffs for the work claimed to be done by them in this case, for over a month, and then giving plaintiffs credit for the same, was a pretty substantial and solemn admission on defendants' part that they were liable for the amount as claimed, and plaintiffs were entitled to the request asked. It was such an admission that it was binding upon them, under all the authorities, unless they could impeach it on the ground of fraud or mistake. This was not attempted to be done on the trial: *White v. Campbell*, 25 Mich. 463 ; *American Nat. Bank v. Bushey*, 45 Mich. 135 ; *Lockwood v. Thorne*, 11 N. Y. 170.

The judgment is reversed, and a new trial granted, with costs of this Court to plaintiffs.

The other Justices concurred.